IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

A.D. HURD, JR.                                    *
                                                  *
                    Plaintiff,                    *
                                                  *
vs.                                               *        No. 2:07CV00040 SWW
                                                  *
PHILLIPS COUNTY, ARKANSAS;                        *
RONNIE WHITE, in his Official Capacity as         *
Sheriff of Phillips County; BARRY ROY,            *
in his Individual and Official Capacity as        *
Trooper/Investigator for the Arkansas State       *
Police; and MIKE RUSSELL, in his Individual       *
and Official Capacity as Deputy for the Phillips  *
County Sheriff's Department;                      *
                                                  *
                    Defendants.                   *
                                                  *

**Memorandum Opinion and Order**

       Plaintiff A.D. Hurd, Jr. brings claims for violation of his Fourth, Fifth, and Fourteenth rights

pursuant to 42 U.S.C. § 1983 against Phillips County; Phillips County Sheriff Ronnie White in his

official capacity;[1] Arkansas State Trooper Barry Roy; and Phillips County Deputy Sheriff Mike

Russell, both in their individual and official capacities.   The matter is before the Court on

defendants' motions for summary judgment to which plaintiff responded and defendants replied.

After careful review of the motions, responses, reply, briefs, statements of undisputed facts, and

exhibits, the Court finds the motions should be granted.  The Court further finds that plaintiff has

---

[1]Although plaintiff states in his brief that Sheriff White is being sued in his official and individual
capacities, *see* Pl's.Br. in Opposition to Def's. Mot. Summ. J. at 3, the complaint clearly states White is sued
in his official capacity only.  *See* Comp. at ¶ 5.

fifteen days to file an amended complaint to add a Fifth Amendment violation of due process based on fabrication of evidence.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)).

"[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted). Further, summary judgment is particularly appropriate where an unresolved issue is primarily legal, rather than factual. *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995).

## Background

Ms. Nermie "Jean" Liddell was an employee of the Phillips County Sheriff's Office.  She was brutally murdered on March 30, 2004.  According to Cody Pruett, on the night of the murder he was driving home when he came upon a jeep that appeared to have run off the road.  He stopped in the road behind the jeep and was about to get out of his vehicle when a young black male got out of the driver's side of the jeep and approached Pruett's vehicle.  Pruett said the man told him his mother had had an accident.  The woman in the passenger seat then fell out of the jeep and was crawling around the back of the vehicle, screaming "Help me."  The man told Pruett to leave and Pruett saw him pull a gun out of a holster.  When he saw the gun, Pruett took off.  He says that as he was driving away, he looked in his rearview mirror and saw the man point the gun at the woman.  Pruett says he saw a flash and heard a shot.  He went home, called the Sheriff's Office, and returned to the scene.  Later that evening, Pruett signed a statement as to what he had observed.

Immediately after Sheriff White arrived at the murder scene, he called Barry Roy, an Arkansas State Trooper/Investigator, to help with the investigation.  Later, after White discovered signs of a struggle at Liddell's house, he called it to the attention of the investigators.  Sheriff White assigned Deputy Sheriff Mike Russell to assist Roy.

The investigators collected evidence including blood, fibers, and glass at the primary crime scene, then moved their investigation to Liddell's house, the secondary crime scene.  They worked through the night and into the next day collecting evidence at the house, including blood and towels.  On the afternoon of March 31, 2004, separate defendants Roy and Russell were contacted about an individual who had information about Liddell's murder.  That individual was O.T. Graves, III, who told Roy and Russell that a person by the name of A.D. Hurd approached him in an alley around

midnight and asked "if he could hit the blunt I was smoking." Mr. Graves said Hurd told him he was

having trouble with the lady at the Sheriff's Office and had shot her that night.

On the night of the murder, Pruett described Liddell's killer as a young black male, in his

early to mid-twenties, six foot to six foot three inches tall, 175-190 pounds, a thin face, medium

round nose, medium complexion, and spaghetti braids about two to three inches long. Plaintiff fit

the general description of the killer except he wears dreadlocks that extend beyond his shoulders.

Based on Graves's information, Roy and Russell prepared a photo lineup and took it to Pruett's

home for him to review. Mr. Pruett picked out the man he thought most resembled the killer, and

said he was 80% sure the man was the shooter.

Based on Graves's statement and Pruett's identification of plaintiff, Roy swore out a warrant

for the arrest of plaintiff. Judge Baird Kinney signed a warrant for plaintiff's arrest on March 31,

2004. Plaintiff was arrested that day and charged with capital murder. The judge denied bail or

release at his first appearance hearing. Even though plaintiff had been arrested for the murder, Roy

and Russell continued their investigation, which included interviewing other witnesses and

reviewing crime lab reports as evidence was processed by the lab. Defendants found plaintiff's alibi

witnesses not credible and their statements to be inconsistent.

Crime lab reports revealed the presence of male DNA in blood collected from the crime

scene and from semen collected from Liddell's body. Plaintiff's DNA did not match any of the DNA

collected in blood or semen found at the crime scenes. Glass fragments from jeans seized when

plaintiff was arrested were determined by the crime lab to be "optically and elementally similar" to

windshield glass fragments from Liddell's jeep. Plaintiff said he informed the police that he had

been cleaning out a house that had broken glass in it, and that could explain how a glass "fragment" was found on his jeans.

Plaintiff was formally charged with capital murder, kidnapping, rape, aggravated robbery, and illegal possession of firearms through an information filed on May 13, 2004.  He appeared for arraignment before Judge Simes on May 17, 2004, and was denied bail.  A hearing was held in September 2004 at which plaintiff again sought pretrial release.  Plaintiff informed the state court judge that the state could not match his DNA to evidence at the scene.  Judge Harvey Yates denied plaintiff pretrial release based on the totality of the evidence at that time.  On or about November 19, 2004, David Lee Grant was arrested on an aggravated robbery charge in Helena, Arkansas.  He confessed to Liddell's murder, and on December 31, 2004, plaintiff was released from jail.

Plaintiff claims defendants Roy and Russell violated his Fourth Amendment right by arresting him without probable cause, and deprived him of his substantive due process rights in violation of the Fifth and Fourteenth Amendments by continuing to detain him because of their reckless investigation.  Plaintiff raises a Fifth Amendment due process claim in his supplemental brief, alleging that Roy and Russell fabricated evidence against him resulting in his unlawful detention.

Separate defendants Roy and Russell first argue they are entitled to qualified immunity.  They then argue, along with the other defendants, that they are entitled to summary judgment because plaintiff has not produced evidence from which a reasonable jury could find them liable.  Defendants' motions for summary judgment address the claims raised in plaintiff's original complaint.  The claim made in his supplemental brief is not addressed.

### Discussion

5

Qualified immunity shields law enforcement officers from liability for civil damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). "Qualified immunity is an affirmative defense for which the defendant carries the burden of proof." *Sparr v. Ward,* 306 F.3d 589, 593 (8th Cir.2002). The purpose of qualified immunity is to allow public officials to perform their duties in a manner they believe to be correct without fear for their own financial well-being. *Id.* "Toward this end, the rule has evolved that an official performing discretionary functions will generally be immune from liability unless a reasonable person in his position would have known his actions violated clearly established law." *Id.* (citing *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)).

"A court engaged in a qualified immunity inquiry uses a two-step process." *Lawyer v. City of Council Bluffs,* 361 F.3d 1099, 1103 (8th Cir.2004). The first question is, taken in the light most favorable to the party asserting the injury, whether the facts alleged show that the official's conduct violated a constitutional right. *Craighead v. Lee,* 399 F.3d 954, 961 (8th Cir.2005) (citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). "If the facts, taken in the light most favorable to the party asserting the injury, show that the [official's] conduct violated a constitutional right, the second question is whether the right was clearly established." Id.

To avoid summary judgment based on qualified immunity, plaintiff has to assert a violation of a constitutional right, show the alleged right was clearly established at the time of the alleged violation, and raise a genuine issue of material fact about whether Russell and Roy would have known their alleged conduct would have violated plaintiff's clearly established right. *Smithson v. Aldrich,* 235 F.3d 1058, 1061 (8th Cir. 2000). In other words, qualified immunity shields Russell

6

and Roy from this lawsuit if they could have reasonably believed their conduct was lawful in light of clearly established law and the information they possessed.  *Id.*

## 1.    Probable Cause to Arrest

Plaintiff asserts that Russell and Roy knew that the affidavit submitted in support of the arrest warrant contained false information.  According to Graves's deposition testimony, on the night of March 30, 2004, he heard about Liddell's murder on the news.  Later that night, he was standing in an alley near his house, when Russell pulled up in an unmarked car, rolled down his window, called him by name, and asked Graves if he had seen anyone suspicious.  Graves says he told Russell he had not seen anything, and Russell told him to let him know if he saw or heard anything.  *See* Pl's. Supp. Br. in Opp'n. to Defs.' Mot. Summ. J., Ex. C.

Mr. Graves said that the following day he went by the Sheriff's Office and asked to speak with Russell.  Defendant Russell was not there at the time but another deputy called him and Russell and Roy came in and spoke with Graves in a room.  Mr. Graves says he heard that the person who committed the crime had "dreads," and Roy pulled out a line of photographs, pointed out Hurd, and told Graves that they were focusing their attention on Hurd.  Mr. Graves says he told them he had never seen or heard of plaintiff.  Mr. Graves said that Russell and Roy then presented him with a statement that Roy had written and offered Graves $200 to sign it.  Mr. Graves said he was on drugs, signed the paper without reading it, and received $100 in cash from both Russell and Roy.  *Id.*

Separate defendant Roy prepared the affidavit for the arrest warrant.  After setting forth the results of the investigation at that time, including Pruett's eyewitness account, Roy stated the following as to Graves:

> ON March 31, 2004 THIS AGENT ALONG WITH DEPUTY MIKE RUSSELL
> CONDUCTED AN INTERVIEW OF A WITNESS WHO STATED THAT A.D.

> HURD APPROACHED HIM TUESDAY (WEDNESDAY MORNING) AT
> APPROXIMATELY 12:30 OR 1:00AM AND TOLD HIM THAT HE KILLED THE
> LADY THAT WORKED AT THE SHERIFF'S DEPARTMENT. HE ALSO TOLD
> HIM THAT HE SHOT HER IN THE HEAD.  THE WITNESS SAID HURD WAS
> WEARING BLUE TENNIS SHOES WITH A WHITE NIKE DESIGN, BLACK
> PANTS, LIGHT COLORED SHIRT WITH STRIPES, BROWN CAR HART
> JACKET, AND A PAIR OF OFF WHITE LATEX GLOVES.  THE WITNESS
> STATED THAT HE OBSERVED A LARGE SPOT OF BLOOD ON THE LEFT
> BOTTOM OF THE LIGHT COLORED SHIRT.

As to Pruett, Roy stated:

> ON March 31, 2004, THIS AGENT AND DEPUTY MIKE RUSSELL
> CONDUCTED A PHOTO LINEUP WITH THE WITNESS.  THE WITNESS
> STATED THAT HE WAS 80 PERCENT SURE THAT THE SUBJECT
> IDENTIFIED AS PERSON NUMBER 4 ON THE PHOTO SPREAD WAS THE
> PERSON HE SAW SHOOT MS LIDDELL ON COUNTY ROAD 217.  PERSON
> NUMBER 5 ON THE PHOTO SPREAD IS A.D. HURD JR.

Defendant Roy further stated:

> A CRIMINAL HISTORY CHECK WAS OBTAINED FROM MINNESOTA INDICATING
> THAT HURD HAD BEEN CHARGED ON TWO DRUG VIOLATIONS, ONE ASSAULT
> IN THE SECOND DEGREE, AND A WEAPONS CHARGE.

*See* Def. Roy's Mot. for Summ. J., Ex. F.

It is clearly established that the Fourth Amendment requires a truthful factual showing

sufficient to constitute probable cause before an arrest warrant can issue. *Burk v. Beene,* 948 F.2d

489, 494 (8th Cir.1991). Information in an affidavit to establish probable cause must be truthful in

the sense that the information put forth is "believed or appropriately accepted by the affiant as true."

*Franks v. Delaware,* 438 U.S. 154, 165 (1978).   In *Franks*, the Supreme Court held that a criminal

defendant is not entitled to a hearing on the truthfulness of statements made in a warrant affidavit

if the content that remains after setting aside the allegedly false or reckless material supports a

finding of probable cause.   Thus, defendants are entitled to qualified immunity if the warrant

affidavit, as reconstructed according to *Franks*, would still provide probable cause to arrest.   *See*

*Bagby v, Brondhaver,* 98 F.3d 1096, 1099 (8th Cir. 1996)(deputy sheriff who was accused of submitting a recklessly false affidavit in support of an arrest warrant was entitled to qualified immunity in a § 1983 action because a corrected affidavit would still have provided probable cause).

The facts are undisputed that Pruett picked Hurd out of a photo lineup and told defendants he was 80% sure Hurd was the man he saw the night of the murder.  Separate defendant Roy's affidavit states that plaintiff was picked out of a photo lineup by a witness to the crime. The Court finds that based on Pruett's identification alone, defendants could have reasonably believed that the affidavit for the arrest was based on probable cause.  *See Malley v. Briggs,* 475 U.S. 335, 344-45 (1986)(affidavit must be "so lacking in indicia of probable cause as to render official belief in its existence unreasonable"); *see also United States v. Peneaux,* 538 F.Supp.2d 1177 (D.S.D. 2008)(statement that victim picked out defendant from photo lineup sufficient to find probable cause).

The Court finds as a matter of law that it was not unreasonable for defendants to have believed based solely on Pruett's identification that plaintiff had committed an offense at the time of the arrest.  Based upon the facts known to defendants at the time of plaintiff's arrest, construed in the light most favorable to plaintiff, there is no evidence that supports a Fourth Amendment violation.  Thus, defendants are entitled to qualified immunity on plaintiff Fourth Amendment illegal arrest claim.

### 2.  Substantive Due Process Claim - Reckless Investigation

Plaintiff alleges that defendants were reckless in their failure to investigate other leads and thus violated his substantive due process rights. "The Fourteenth Amendment guarantees '[s]ubstantive due process [, which] prevents the government from engaging in conduct that shocks

the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Moran v. Clarke,*

296 F.3d 638, 643 (8th Cir. 2002)(alterations in the original)(quoting *Weiler v. Purkett,* 137 F>3d

1047, 1051 (8th Cir. 1998)(en banc).

> We recognized a substantive due process cause of action for reckless investigation
> in *Wilson v. Lawrence County*, 260 F.3d 946 (8th Cir. 2001), where we identified the
> liberty interest at stake as the 'interest in obtaining fair criminal proceedings.'   The
> test for whether state officers' actions   violate this protected liberty interest is
> whether those actions shock the conscience.   Mere negligent failure to investigate
> does not violate substantive due process.   Likewise, allegations of gross negligence
> do not give rise to a constitutional violation.   Where state officials 'have the
> opportunity to deliberate various alternatives prior to selecting a course of conduct,
> such action violates due process if it is done recklessly.'   To establish a violation of
> this right by a botched investigation, [the plaintiff] must show that [the defendants]
> intentionally or recklessly failed to investigate, thereby shocking the conscience.   As
> the *Wilson* court noted, the recklessness standard has a subjective component.

*Armine v. Brooks,* 522 F.3d 823, 833-34 (8th Cir. 2008)(internal citations omitted).

The victim in *Wilson v. Lawrence County* was tied up, beaten, and then left to die as her

house was set on fire.   Wilson, a mentally impaired twenty-year- old, gave an involuntary confession

after being interrogated for over four hours.   Law enforcement officers had no reliable corroborating

evidence to link Wilson to the murder.   They did have information concerning a escaped felon with

a *modus operandi* matching the murder and an eyewitness who saw someone outside of the victim's

house shortly before the fire who would have testified Wilson was not the person she saw.   These

are the leads Wilson said the officers chose not to pursue.   The Eighth Circuit affirmed the district

court's denial of qualified immunity.

In *Clemmons v. Armontrout,* 477 F.3d 962 (8th Cir. 2007), a prisoner was stabbed to death

and Officer Steigerwald identified Clemmons as the perpetrator.   An inmate named Clark told

Captain Gross, who was investigating the murder that another inmate, Bagby, was involved in the

murder.  Gross never questioned Bagby or searched his cell because Gross determined that Clark was

not a credible witness because Bagby's name was not on a list of inmates who were said to be out of their cells at the time of the murder.  Gross prepared a investigation memorandum to that effect and gave it to Investigator Brooks.  Brooks never interviewed Bagby or Clark.  The Eighth Circuit held that the actions of the investigating officers were not intentional or reckless, particularly because Steigerwald's eyewitness account had identified Clemmons.  Also, Clemmons did not produce any evidence that Brooks consciously sought to suppress exculpatory evidence or unlawfully coerced others to refrain from investigating other leads.  *Id.* at 966-67.  The court held that Brooks was entitled to qualified immunity.

In *Moran v. Clarke,* 296 F.3d 638, 647-48 (8th Cir. 2002)(en banc), a police officer who was acquitted of beating a man during a mistaken arrest, sued police officials and the board of police commissioners, alleging violation of his substantive due process rights.  The court held that Moran produced evidence that tended

> to show a police department that publicly and financially committed itself to producing a culprit for an alleged wrongdoing before any such wrongdoing was actually established.  He produced proof of questionable procedures, of pressure placed on officers to incriminated a specific person or corroborate the department's official line, of a hasty condemnation of Moran and of improper consideration of his race.  Moreover, he offered proof that, at various times, certain defendants purposely ignored evidence that strongly tended to exonerate him.

The court held that Moran could establish a due process violation if a jury were to find his evidence credible.

Plaintiff argues defendants acted recklessly in arresting him, citing Roy's testimony that there was some pressure to solve the case as soon as possible.  He complains that rather than arresting him based on Pruett's "shaky identification" and the testimony of a drug addict, defendants should have brought plaintiff in for questioning, checked out his alibi witnesses, and had him submit hair, blood,

and saliva samples.  Plaintiff complains that while Roy believed that "someone had received a severe

injury causing heavy blood loss in the victim's bedroom," plaintiff had no injuries whatsoever upon

his arrest less than 24 hours after the murder.  Plaintiff protested his innocence and offered to take

a lie detector test but Roy did not take him up on his offer.  Plaintiff points to the findings of the

crime lab which found plaintiff's DNA did not match that found in the house, vehicle, or on Liddell

Construing the facts in a light most favorable to the plaintiff, the Court finds that a reasonable

factfinder could not find that Roy and Russell acted recklessly in investigating the murder.  There

is no evidence that there were other leads defendants failed to investigate or that they concluded their

investigation upon plaintiff's arrest.[2]  Therefore, the Court finds Roy and Russell are entitled to

qualified immunity.

### 3.        Official Capacity Claims

Plaintiff sues Roy and Russell in their official capacities, and sues Sheriff White in his

official capacity.  A lawsuit against a governmental actor in his official capacity is synonymous with

a suit against the entity itself.  Therefore, the official capacity claims against Russell and White are

actually claims against Phillips County.  *See Kentucky v. Graham,* 473 U.S. 159, 165 (1985) (official

capacity suits generally represent only another way of pleading an action against an entity of which

an officer is an agent).

 In a § 1983 action, a municipality may only be held liable for constitutional violations which

result from a policy or custom of the municipality.  *Turney v. Waterbury,* 375 F.3d 756 (8th Cir.

2004).  To succeed in his claims against Phillips County, Hurd must prove (1) a constitutional injury,

---

[2]It appears that the prosecutor believed plaintiff may have been an accomplice.  *See* Def. Roy's Mot.
Summ. J., Ex. L at 117.

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986), (2) that an "official policy or widespread custom or practice" caused the injury, *Board of County Commr's v. Brown,* 520 U.S. 397 (1997), and (3) that through "deliberate conduct" the County was the "moving force behind the injury," *id.* at 404.  The second requirement guards against holding a government body vicariously liable for the acts of all its employees, while the third requirement insures the necessary degree of culpability and causal link between official action and the deprivation of a constitutional right.  In the absence of a written policy, a plaintiff must identify a pattern of widespread unconstitutional conduct that was so pervasive and well-settled that it had the effect of law.  *Jane Doe A v. Special Sch. Dist.,* 901 F.2d 642, 646 (8th Cir. 1990).

Plaintiff states that Sheriff White was up for re-election at the time of the murder and had opposition in the May primary.  Plaintiff asserts that it was in White's interests to get the murder solved as soon as possible.  This pressure, plaintiff alleges, caused White to allow Hurd to be arrested even though White knew that the person who broke into Liddell's home had to have sustained some type of injury and Hurd had not.  Plaintiff points to White's failure to investigate Graves's background or check his veracity before allowing his statement implicating Hurd to be used.  Plaintiff argues White gave his tacit authorization to the unconstitutional conduct of his subordinates Roy and Russell.

Plaintiff presents no evidence that Phillips County has a policy and practice of submitting affidavits that lack probable cause or affidavits that contain false or misleading information.  There is no evidence to support a finding of the existence of a pattern of persistent and widespread unconstitutional practices that had become so permanent and well-settled as to have the force and effect of law.  Therefore, plaintiff's official capacity claims against White and Russell and claims

against Phillips County are dismissed.

As to plaintiff's claims against State Trooper Roy in his official capacity, suits naming a defendant in his "official capacity" are treated as suits against the state and therefore subject to a defense of sovereign immunity under the Eleventh Amendment. *See Will v. Mich. Dep't of State Police,* 491 U.S. 58, 71 (1989). Further, "neither a State nor its officials acting in their official capacities are 'persons' " subject to 42 U.S.C. § 1983. *Id.* Plaintiff can only seek damages against Roy in his individual capacity. *See Get Away Club, Inc. v. Coleman,* 969 F.2d 664, 668 (8th Cir. 1992). The Court has found Roy is entitled to qualified immunity.

Moreover, because the Court finds defendants' action were not unconstitutional, plaintiff fails to make a case against the County under § 1983. *See McVay v. Sisters of Mercy Health Sys.,* 399 F.3d 904, 909 (8th Cir. 2005)(in order for municipal liability to attach, individual liability must first be found on an underlying substantive claims).

**4.      Fifth Amendment Due Process - Fabrication of Evidence**

Plaintiff asserts in his supplemental brief in opposition to defendants' motion for summary judgment that, in light of Graves's deposition testimony, he has presented sufficient evidence to create a genuine issue of material fact as to whether Russell and Roy fabricated evidence against him and used that evidence to obtain an arrest and a search warrant which led to his unlawful detention for nine months. Plaintiff raises this claim for the first time in his supplemental brief. The Court will allow plaintiff fifteen (15) days to amend his complaint to add this claim.

**Conclusion**

IT IS THEREFORE ORDERED that defendants' motions for summary judgment [docket entries 11 & 14] should be and are hereby granted. Plaintiff's claims that defendants violated his

14

Fourth Amendment right by arresting him without probable cause and deprived him of his substantive due process rights in violation of the Fifth and Fourteenth Amendments by conducting a reckless investigation are dismissed.  Plaintiff is allowed fifteen (15) days to file an amended complaint to add a Fifth Amendment fabrication of evidence claim.

DATED this 9th day of October 2008.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE